Filed 12/1/22  P. v. Herrera-Castillo CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SIMEON HERRERA-CASTILLO,<br><br>    Defendant and Appellant. | A162125<br><br>(Contra Costa County Super. Ct. No. 51909738) |

A jury convicted defendant Simeon Herrera-Castillo of committing a lewd act upon a child under age 14.  The trial court imposed a three-year prison term.  On appeal, Herrera-Castillo contends that his pretrial statements to police were involuntary and that the court prejudicially erred by admitting them into evidence.  We conclude the statements were voluntary and affirm the judgment.

## I. BACKGROUND

### A. *The Evidence Presented at Trial*

In early 2018, Jane Doe was 10 years old.  She lived with her parents and her brother, who was a few years older than Doe.  One day in late February or early March 2018, Doe's father drove her and her brother to their grandparents' home and dropped them off.

Herrera-Castillo, who is Doe's great-uncle, lived in the house with Doe's grandparents. Also living at the grandparents' house were Doe's aunt, uncle, and male cousins. One cousin was around six years old and another was 11 or 12 years old. Doe believed her grandfather was not home that day (and was unsure whether her aunt and uncle were home), but her grandmother and two cousins were home.

When Doe and her brother arrived at their grandparents' house, they sat at a table in the living room to play Monopoly. The table had a large tablecloth that hung one to two feet over the sides. Doe's brother and older cousin left the table and went into the older cousin's room, leaving Doe and her younger cousin at the table.

At some point, Herrera-Castillo came over to the table to join the game and sat down next to Doe. Doe's cousin moved to the other side of the table. Doe felt a little uncomfortable when Herrera-Castillo joined them since he had not interacted much with Doe during previous visits to her grandparents' house or at family gatherings. Doe and her cousin explained the rules of the game to Herrera-Castillo. No other adults were in that part of the house.

Under the tablecloth, Herrera-Castillo reached toward Doe's pants and touched her vagina. He first touched her over her clothing and then under her pants and underwear. He rubbed her with his fingers. Herrera-Castillo never penetrated Doe but, rather, pressed on the "sides" of or "outside" her vagina as he moved his fingers back and forth. Herrera-Castillo pulled his hand away. He then reached toward Doe's buttocks, touching her back over her clothing. Doe, who was sitting with her feet under her, used her feet to move Herrera-Castillo's hand away, and he did not reach her buttocks. Herrera-Castillo then left the table. Doe's father arrived to take her home a short time later.

2

Doe did not immediately tell anyone about what Herrera-Castillo had done. She tried not to think about the incident. About a month later, on March 19, 2018, Doe's mother noticed Doe's eyes were red and teary, and she went into Doe's room and asked her what was wrong. Doe decided to tell her mother about the incident. Doe said, "I just couldn't really keep it in. I just felt like I had to tell someone." Doe's mother called Doe's father, and they decided they would call the police.

On March 30, 2018, Doe described the incident during an interview at the Children's Interview Center. A video recording of the interview was played for the jury at trial.

As we discuss further in part II.A., *post*, Sergeant Matt Millman and Detective James Roberts with the Concord Police Department interviewed Herrera-Castillo on February 28, 2019, after his arrest. Detective Roberts is a fluent Spanish speaker and conducted most of the questioning. During the interview, Herrera-Castillo made statements about how he touched Doe. The video recording of the interview was admitted into evidence and played for the jury.

During the interview, Detective Roberts asked Herrera-Castillo if he wanted to write a note to Doe. Herrera-Castillo said he does not know how to write. Herrera-Castillo dictated the note to Detective Roberts, who translated it from Spanish to English. The note was admitted into evidence at trial. The note stated: "Forgive me, your uncle, Simeon Herrera. I ask you to forgive me or ask you for your forgiveness and to forgive me. If for one day I arrived or I failed to respect you when we were playing with you—or when you were playing with me and []. I ask your forgiveness that you— sorry—I ask for your forgiveness and that it will not happen again. I ask you please."

**B.** *Procedural Background:  The Charges, Verdict, and Sentence*

An information filed in May 2019 charged Herrera-Castillo with three counts of committing a lewd act upon a child under 14 years of age.  (Pen. Code,[1] § 288, subd. (a).)  The information alleged the first count involved substantial sexual conduct with Doe.  (§ 1203.066, subd. (a)(8).)

In January 2020, the jury found Herrera-Castillo guilty on count 1 and found the allegation of substantial sexual conduct true.  The jury found Herrera-Castillo not guilty as to counts 2 and 3; as to those counts, the jury also found him not guilty of the lesser included offense of attempted commission of a lewd act (§§ 664, 288, subd. (a)).[2]

In February 2021, the court sentenced Herrera-Castillo to the low term of three years in prison and deemed his sentence served based on pretrial custody credits.

Herrera-Castillo appealed.

## II. DISCUSSION

Herrera-Castillo argues that, in light of his personal characteristics and the interrogation techniques used by the investigating officers, his statements during his police interview were involuntary.  We uphold the trial court's conclusion that, considering the totality of the circumstances, the statements were voluntary.

---

[1] Undesignated statutory references are to the Penal Code.

[2] In response to an earlier question from the jury as to the basis for each count, the court and counsel agreed on the following response:  " 'Count One [the charge on which Herrera-Castillo was later convicted] refers to alleged touching of the vagina under clothing.  Count Two refers to alleged touching of the vagina over clothing.  Count Three refers to alleged touching of the buttocks.' "

## A. *Additional Background*

Detective Roberts and Sergeant Millman interviewed Herrera-Castillo on February 28, 2019.[3]  Detective Roberts conducted the interview in Spanish and, at times, interpreted questions posed by Sergeant Millman and translated Herrera-Castillo's responses.  Before starting his substantive questioning, Detective Roberts advised Herrera-Castillo of his *Miranda*[4] rights in Spanish, and Herrera-Castillo agreed to speak with the officers.  The interview lasted for one hour eight minutes.

When asked if he knew why he was in custody, Herrera-Castillo said he was told he had raped someone, but he denied having done so.  Herrera-Castillo stated that, if he wanted to have sex, he had a girlfriend.

About 30 minutes into the interview, Detective Roberts began asking Herrera-Castillo specifically about the day of the crime.  Detective Roberts asked Herrera-Castillo if he remembered a day when two girls were at the house playing a game and he asked permission to play with them.  Herrera-Castillo responded, "Like, yes.  We were playing, but, well, their dad was there with—with me.  If it's—we were simply drinking a beer."  Detective Roberts stated that he knew what happened and wanted Herrera-Castillo to help the officers understand why those things happened.

---

[3] In connection with the hearing on Herrera-Castillo's pretrial motion to exclude the statements, the court reviewed the video recording of the interview.  Pursuant to the parties' stipulation, the court also considered a transcript translating the interview from Spanish to English (which had been submitted with the defense motion).  At trial, the video recording was admitted into evidence and played for the jury, and a different transcript translating the interview (this one prepared by the prosecution) was given to the jurors as a guide to assist in understanding the video recording.

[4] *Miranda v. Arizona* (1966) 384 U.S. 436.

Herrera-Castillo initially denied having touched Doe. Detective Roberts moved around the table and sat down next to Herrera-Castillo. Detective Roberts asked Herrera-Castillo whether he might have touched Doe's leg inadvertently under the table, and he demonstrated by touching Herrera-Castillo's leg under the table. Herrera-Castillo responded that he was simply going to tell the truth, and he touched Detective Roberts to demonstrate how he had pushed Doe away from him. In the course of their discussion, Detective Roberts and Herrera-Castillo then touched each other and themselves on multiple occasions to demonstrate how and where Herrera-Castillo had touched Doe on that one occasion.[5] At the end of the interview, Detective Roberts put his hand on Herrera-Castillo's shoulder, thanking him for having shared the truth.

Before trial, Herrera-Castillo filed a motion to exclude the statements he made during the police interview on the ground they were coerced and involuntary. The prosecution opposed the motion. After hearing argument and having reviewed the video recording of the interview, the court denied the motion. Noting there was a proper *Miranda* warning and waiver of rights, the court found that, based on the totality of the circumstances, the interrogation was not coercive.

Addressing the portion of the interview where Detective Roberts moved around the table to sit next to Herrera-Castillo, the court stated: "I will say he didn't appear to be looming over him the times that I saw him. He's not a small man, but he was seated the whole time. He never stood up and kind of hovered over the defendant. He sat down in the chair. He did lean forward a

_____

[5] When Detective Roberts later testified at trial, he said that Herrera-Castillo (although changing his account during the interview) ultimately stated (and indicated with gestures) that he touched Doe inside her clothing and to the side of her vagina but did not put his fingers inside her vagina.

6

lot on his forearms when he was talking with the defendant, and the defendant also appeared to be on his forearms a lot as he spoke as well."

The court stated the physical contact between Detective Roberts and Herrera-Castillo appeared to be either "demonstrative" or "reassuring." The court stated: "There was, I agree, a lot of touching that went on during the course of this interrogation that lasted slightly over an hour, but it seemed demonstrative. And the detective touched the defendant, and the defendant touched the detective. At no time did I see the detective touch Mr. Herrera-Castillo in any sort of personal area of his body such as his crotch. When the detective did get to a personal area, he actually used his own crotch to demonstrate. [¶] A couple of times he touched the defendant on the back and also on the forearm. Given the tone and kind of the atmosphere of what was going on at times, it actually seemed as if he was being reassuring. At one point, he interrupted the defendant and that's when he reached forward and touched the defendant's forearm."

The court noted there was some repetition in the questioning but no promises of leniency, although the officers urged Herrera-Castillo to tell the truth. The officers did not raise their voices. The court agreed with defense counsel that Herrera-Castillo is "not sophisticated," but noted he was "very conversational" and his answers to questions were "responsive." He did not appear to be confused by the questions. Finally, the court stated that, in its view, it was not clear whether "there really was a confession," although there were "some statements of sorts," noting it would be for the jury to determine the meaning and import of Herrera-Castillo's statements.

B. *Standard of Review*

"Both the federal and state Constitutions bar prosecutors from introducing into evidence a defendant's involuntary statement to government officials." (*People v. Battle* (2021) 11 Cal.5th 749, 790.) "In determining

7

whether a statement is involuntary, 'we consider the totality of the circumstances to see if a defendant's choice to confess was not " ' " 'essentially free' " ' " because his will was overborne by the coercive practices of his interrogator.' [Citation.]  Coercive police conduct includes physical violence, threats, direct or implied promises, or any other exertion of improper influence by officers to extract a statement.  [Citation.]  The presence of coercion is a necessary, but not always sufficient, predicate to finding a confession was involuntary.  [Citation.]  We also consider other surrounding circumstances apparent from the record, including both the details of the interrogation and the characteristics of the accused." (*Ibid.*; see *People v. Johnson* (2022) 12 Cal.5th 544, 584 [defendant's renewal of contact with police is only valid if it is not the product of the authorities' coercion].)

The prosecution has the burden to prove by a preponderance of the evidence that a defendant's statement was voluntary.  (*People v. Linton* (2013) 56 Cal.4th 1146, 1176.)  On appeal, we accept the trial court's factual findings if they are supported by substantial evidence, and "we review de novo the ultimate legal question of voluntariness." (*People v. Battle*, *supra*, 11 Cal.5th at p. 790.)  "The facts surrounding an admission or confession are undisputed to the extent the interview is tape-recorded, making the issue subject to our independent review." (*People v. Linton*, *supra*, 56 Cal.4th at p. 1177.)

### C. *Analysis*

Herrera-Castillo contends the officers used coercive interrogation techniques that overbore his will and caused him to make involuntary statements.  In particular, he challenges as coercive Detective Roberts's change of position in the interview room and his touching of Herrera-Castillo, the officers' use of "maximization/minimization and false choice strategies" (including by stating they knew what happened and suggesting alternative

8

explanations for why Herrera-Castillo touched Doe), and Detective Roberts's invocation of religion in urging Herrera-Castillo to tell the truth. Relying in part on the decision by Division Two of this District in *In re Elias V.* (2015) 237 Cal.App.4th 568 (*Elias V.*), Herrera-Castillo asserts he was vulnerable and susceptible to the officers' interrogation techniques because he is illiterate, indicating he has little or no education; he speaks little or no English; and he is not sophisticated or familiar with the criminal justice system.[6]

Based on our review of the record, including the video recording of the interview, we conclude Herrera-Castillo's statements were voluntary. We agree with the Attorney General that *Elias V.*, which involved the interrogation of a 13-year-old boy (a "young adolescent") (*Elias V.*, *supra*, 237 Cal.App.4th at p. 591) and focused on the vulnerabilities of juveniles who are questioned by the police (*id.* at pp. 587–588), is not directly applicable to Herrera-Castillo, who was 45 years old at the time of the police interview at issue here.[7] And while there is evidence Herrera-Castillo has received limited education, does not speak English, and appears to be "not sophisticated" (as the trial court stated), we also agree with the trial court

---

[6] Herrera-Castillo also suggests that, although he has been in the United States for 20 years, he was "likely undocumented." But as the Attorney General notes, there is no evidence in the record on this point.

[7] In a passage cited by Herrera-Castillo, the *Elias V.* court referred at one point to racial minorities as well as juveniles, but the court's focus was on police interrogation of juveniles. (*Elias V.*, *supra*, 237 Cal.App.4th at pp. 595–596 [" 'Social expectations of obedience to authority and children's lower social status make them more vulnerable than adults during interrogation. Less powerful people, such as juveniles or racial minorities, often speak indirectly with authority figures to avoid provoking conflict. Juveniles may acquiesce more readily to police suggestions during questioning.' "].)

that, on the video recording, he does not appear to be confused or unable to converse with the officers or answer their questions. The officers do not raise their voices or make threats. Herrera-Castillo is in civilian clothing and is not handcuffed. The interview, at just over one hour, was not prolonged. And as noted, Herrera-Castillo was given *Miranda* warnings in Spanish. In our view, the events shown on the video recording weigh against a conclusion that Herrera-Castillo was exceptionally vulnerable or that his will was overborne.

Turning to the specific interrogation techniques identified by Herrera-Castillo, we similarly do not find a basis for concluding his statements were involuntary. While Detective Roberts's changing his position in the room to sit next to Herrera-Castillo is a relevant consideration in assessing voluntariness, we agree with the trial court that the detective's movements were not likely to be intimidating or threatening. As the court noted, although Detective Roberts is "not a small man," he did not stand and "loom[]" or "hover[]" over Herrera-Castillo. He sat down in a chair and remained seated. We also agree his touching of Herrera-Castillo appeared to be "demonstrative" or "reassuring" rather than threatening. Herrera-Castillo does not appear to have reacted in a fearful way to Detective Roberts's movements or touching; instead, he engaged in a dialogue that involved touching by both participants.

As to some of the other interrogation techniques mentioned by Herrera-Castillo, the officers did display an air of confidence, including by stating they knew what had happened, and they suggested possible explanations for why Herrera-Castillo touched Doe, such as that it was inadvertent, that it gave him sexual pleasure, or that his consumption of alcohol had affected his behavior. These statements by the officers do not persuade us Herrera-

10

Castillo's statements were involuntary. Even assuming the officers exaggerated the progress of their investigation (and they may not have been exaggerating, since Doe had already provided her account of the incident at the Children's Interview Center), their statements do not persuade us there was anything in the questioning that was tantamount to coercion. We also disagree with Herrera-Castillo's suggestion that the officers, by positing alternative explanations of his conduct, made an implied promise of leniency. Merely suggesting possible explanations of events is not improper or coercive. (*People v. Williams* (2010) 49 Cal.4th 405, 444.)

Finally, Herrera-Castillo argues that a reference to religion by Detective Roberts was coercive. Partway through the interview, Detective Roberts made a statement to the effect that "[w]hen we arrive before God . . . we have to tell him everything," even if it is "difficult to say." In our view, these remarks do not support a finding that Herrera-Castillo's statements were involuntary. Detective Roberts talked about the need to be honest before God, but there is no evidence his statements were "calculated to exploit a particular psychological vulnerability" on the part of Herrera-Castillo, and "no acute religious anxiety or sense of guilt was apparent from prior questioning." (*People v. Kelly* (1990) 51 Cal.3d 931, 953; see *People v. Case* (2018) 5 Cal.5th 1, 25 [discussing alleged psychological coercion tactics].) We also note Detective Roberts's reference to religion did not prompt Herrera-Castillo to provide an unqualified confession, a fact that "tends to undercut the notion that his free will was overborne by the detective's remarks." (*Case*, *supra*, 5 Cal.5th at p. 26.) Instead, immediately after Detective Roberts made the challenged remarks, Herrera-Castillo continued to deny he had touched Doe's vagina. Considering the

11

interrogation as a whole and the totality of the circumstances, we do not find Herrera-Castillo's statements were involuntary.[8]

## III. DISPOSITION

The judgment is affirmed.

STREETER, Acting P. J.

WE CONCUR:

BROWN, J.
GOLDMAN, J.

---

[8] Because we conclude the court did not err by admitting Herrera-Castillo's statements, we need not address the parties' arguments as to whether the asserted error was prejudicial.